UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DAVID WILLIAM NAIL,<br><br>    Plaintiff,<br><br>    v.<br><br>SCOTT LEE TARLTON, et al.,<br><br>    Defendants. | Case No. 1:23-CV-247-GSL-SLC |

## OPINION AND ORDER

This matter is before the Court on Defendant Tarlton's Motion to Dismiss [DE 41], Plaintiff's Motion for Sanctions [DE 46], Plaintiff's Motion for Partial Summary Judgment [DE 56], and Plaintiff's Motion to Strike [DE 62]. Defendant Bluffton Regional Medical Center and Defendant Thompson join Defendant Tarlton on all his motions and responses. [DE 55; DE 61]. For the following reasons, the Court GRANTS Defendant Tarlton's Motion to Dismiss [DE 41] and DENIES Plaintiff's Motion for Sanctions [DE 46]. The Court DISMISSES Plaintiff's other motions [DE 56; DE 62] as moot.

**A. Factual Background**

Since at least 2019, Plaintiff has suffered from a skin condition that leads to unpredictable and uncomfortable skin rashes. [DE 36-1, ¶ 12]. For several of these outbreaks, Plaintiff would go to the Emergency Room ("ER") of the Bluffton Regional Medical Center ("BRMC"). [*Id.* at ¶ 12–13]. In June 2022, Plaintiff again suffered a skin irritation, went to the ER at BRMC, and was seen by an attending ER doctor—Defendant Tarlton. [*Id.* at ¶ 16–18]. After examining Plaintiff, Defendant Tarlton prescribed prednisone but informed Plaintiff that he would not provide him with prednisone again if he returned to the ER with the same condition.

[*Id.* at ¶ 18]. Defendant Tarlton reasoned that Plaintiff suffered from a chronic, pre-existing condition that was not appropriate for treatment through emergency medicine in an emergency room environment, but rather by a skin specialist or primary care physician who could offer consistent treatment over time. [DE 60-1, ¶¶ 12, 14]. While not agreeing with Defendant Tarlton's refusal to treat his condition again in the ER, Plaintiff conceded in the Complaint that his condition was chronic. [DE 36-1, ¶ 19].

On May 22, 2023, Plaintiff returned to the ER at BRMC with a skin irritation. [*Id.* at ¶ 20]. On this visit, Plaintiff was again seen by Defendant Tarlton. [*Id.* at ¶ 25]. But this time, Defendant Tarlton did not provide predinisone or any other medicine. [*Id.* at ¶¶ 25–26, 32]. Instead, Defendant Tarlton informed Plaintiff that he should see his regular primary care physician for his condition and would be discharged from the emergency room. [*Id.* at ¶¶ 27, 30]. After leaving the examination room, Plaintiff sought out and complained to multiple administrative secretaries, attempted to video record these conversations, and verbalized threats of litigation to several BRMC administrators that he ran into in the hallway. [*Id.* at ¶¶ 34–38].

After this incident, but on the same day of May 22, 2023, Plaintiff went to Adams Memorial Hospital in Decatur, Indiana, for evaluation and treatment of the same skin irritation. [*Id.* at ¶ 40]. Plaintiff received prednisone from medical providers at Adams Memorial Hospital. [*Id.*]. However, Plaintiff alleges that, as of June 2023, his skin condition had worsened, and, as a result, his dermatologist provided more prednisone. [*Id.* at ¶ 45]. Moreover, Plaintiff alleges that Defendant Tarlton's refusal to provide prednisone, or otherwise treat Plaintiff, on May 22, 2023, was the cause for Plaintiff's condition to worsen and had put him at risk of suffering anaphylaxis shock. [*Id.* at ¶ 49]. Plaintiff is seeking damages of two million dollars from Defendant Tarlton,

over three million dollars from Defendant BRMC, and over two million dollars from Defendant Julie Thompson—BRMC Chief Administrative Officer. [*Id.* at pages 9–10].

Plaintiff filed this suit *pro se* and has represented himself throughout the entire litigation. "A trial court is obligated to liberally construe a *pro se* plaintiff's pleadings." *Parker v. Four Seasons Hotels*, Ltd., 845 F.3d 807, 811 (7th Cir. 2017) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). As such, this Court will address any cogent arguments that are discernible from Plaintiff's Complaint and subsequent briefings. *See id.* In his Amended Complaint, Plaintiff alleges that Defendants violated the Emergency Medical Treatment and Labor Act (EMTALA), 42 U.S.C. § 1395dd. [DE 36-1]. In addition, Plaintiff makes various other assertions relating to "failure to train," "age discrimination," "intentional medical discrimination," and "dereliction of duty claims." [*Id.*]; *see* [DE 56, page 2]. These other assertions are vague, and the Court is unable to interpret them to be separate and valid claims. To the extent that these other assertions contain plausible arguments, the Court will infer that they are a part of Plaintiff's EMTALA claim.

### B. Standard of Review

Pursuant to Rule 12(b)(1), courts are authorized to dismiss claims over which they have no subject-matter jurisdiction—i.e., when standing is lacking. Fed. R. Civ. P. 12(b)(1). *See Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021) ("When a plaintiff lacks standing, a federal court lacks jurisdiction."). A standing challenge under Rule 12(b)(1) tests "whether the allegations, taken as true, support an inference that the elements of standing exist." *Id.* (quoting *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020)). These elements are "1) an injury in fact that is 2) fairly traceable to the challenged action of the defendant and 3) is likely, not merely speculative, that the injury will be

redressed by a favorable decision." *In re Recalled Abbott Infant Formula Prod. Liab. Litig.*, 97 F.4th 525, 528 (7th Cir. 2024) (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 179 (2000)). The injury must be "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 529 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)). A court will accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Prairie Rivers Network*, 2 F.4th at 1007. However, the plaintiff bears the burden of establishing that subject-matter jurisdiction is proper. *See id.* at 1007–08.

Under Rule 12(b)(6), courts are also authorized to dismiss actions when the pleading does not contain sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "When examining a motion to dismiss, [a court] will accept as true all well-pleaded facts in the complaint and draw reasonable inferences in favor of the plaintiff." *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 523 (7th Cir. 2022) (citation omitted). "But legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *Id.* (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)).

C. Discussion

   i. **Defendant Tarlton's Motion to Dismiss**

Defendant Tarlton argues that Plaintiff's Complaint should be dismissed for a variety of reasons. The Court will address two of them. First, Defendant argues that the Court should

4

dismiss the case under Rule 12(b)(1) because Plaintiff lacks standing. Defendant reasons that because Plaintiff did not have an emergency medical condition, he lacked a legally protected interest under EMTALA. Second, Defendant also argues that the Court should dismiss the case under Rule 12(b)(6) for failure to state an EMTALA claim.

Congress enacted EMTALA to mitigate the problem of hospitals "dumping" patients who were indigent or uninsured. *Magruder ex rel. Magruder v. Jasper Cnty. Hosp.*, 243 F. Supp. 2d 886, 890 (N.D. Ind. 2003) (citing H.R.Rep. No. 241, 99th Cong., 1st Sess., Part I at 27 (1985)). Under the statute, hospital emergency departments are required to "provide for an appropriate medical screening examination . . . to determine whether or not an *emergency medical condition* . . . exists." 42 U.S.C. § 1395dd(a) (emphasis added). An emergency medical condition is defined as:

> [A] medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—
> 
> (i)    Placing the health of the individual . . . in serious jeopardy,
> 
> (ii)   Serious impairment to bodily functions, or
> 
> (iii)  Serious dysfunction of any bodily organ or part . . . .

§ 1395(e)(1)(A). If an emergency medical condition is discovered, the hospital is required to stabilize the condition. § 1395(b)(1)(A).

The "statutory duty to screen patients" in the emergency room is satisfied if the "screening examination [is] *reasonably calculated* to identify critical medical conditions that may be afflicting symptomatic patients and [a hospital] *provides that level of screening uniformly* to all those who present substantially similar complaints." *Magruder*, 243 F. Supp. 2d

at 891 (emphasis added) (citing *Baber v. Hospital Corp. of Am.*, 977 F.2d 872, 879 (4th Cir.1992) and *Gatewood v. Washington Healthcare Corp.*, 933 F.2d 1037, 1041 (D.C.Cir.1991)). In other words, the required screening is subjective based on the patient's condition but must be consistent across patients with similar conditions. A successful EMTALA claim must show that the "hospital provided [the plaintiff] with only a cursory screening or treated her disparately." *Est. of Haight v. Robertson*, No. 03-CV-885, 2008 WL 906013 (N.D. Ind. Mar. 31, 2008). *See Bode v. Parkview Health Sys., Inc.*, No. 07-CV-324, 2009 WL 790199 (N.D. Ind. Mar. 23, 2009) ("[W]hen a departure from the standard screening procedures is only a slight deviation—de minimis—there is no violation of EMTALA."). In the instant case, Plaintiff alleges that Defendants violated EMTALA because Defendant Tarlton did not medically screen Plaintiff or provide him prednisone when he went to the ER at BRMC on May 22, 2023. [DE 36-1].

First, Plaintiff did not have an emergency medical condition when he was seen by Defendant Tarlton on May 22, 2023. When Plaintiff arrived at the ER on the day at issue, he only suffered from skin irritations that he has conceded are attributable to a chronic condition. [DE 36-1, ¶ 19]. A year prior, Defendant Tarlton had diagnosed and treated this same condition on Plaintiff, and, more significantly, had told Plaintiff that the condition was not an emergency medical condition but was a chronic condition that should be treated by a skin specialist or a primary care physician. Despite this admonition, Plaintiff returned to the ER a year later when suffering from the same symptoms. While Plaintiff makes some allegations of more dire symptoms, they are not supported by facts and are just conclusory statements made to satisfy the § 1395(e)(1)(A) definition of an emergency medical condition. Instead, the undisputed facts provided on this matter are clear: Plaintiff has suffered from an irritable skin condition for several years, he sought treatment in the emergency room multiple times for this condition,

6

Defendant Tarlton previously diagnosed this condition as a chronic condition that was not suitable for treatment by emergency medicine, and Plaintiff still insisted on returning to the emergency room for the same condition. Moreover, Plaintiff has not alleged any significant medical issues that resulted from being discharged by Defendant Tarlton—an inevitable consequence had Plaintiff actually suffered from an emergency medical condition that went unscreened and untreated. Plaintiff's skin condition is not an emergency medical condition under §1395(e)(1)(A), and therefore, Plaintiff does not have a legally protected interest under EMTALA. This alone warrants dismissal of the claim for lack of standing under Rule 12(b)(1).

Second, Plaintiff did not sufficiently plead a violation of the screening requirement under EMTALA. There is no need for the Court to go into a discussion about whether Defendant Tarlton provided an examination that was "reasonably calculated" and was "uniformly" given to those with similar complaints because Defendant already knew about Plaintiff's condition. *Magruder*, 243 F. Supp. 2d at 891. The sufficiency of the screening examination is measured, in part, by whether the exam was adapted to "identify critical medical conditions." *Id.* Here, Plaintiff's alleged "critical medical condition" was his skin irritation. While Plaintiff complains that Defendant Tarlton's medical screening examination was lacking, he does not dispute the fact that Defendant Tarlton had knowledge of his skin condition. He even confirms that Defendant Tarlton was aware of his past trips to the ER with the same condition and had treated Plaintiff previously for the same condition. Plaintiff does not suggest what a more "comprehensive" screening examination should have unveiled. The skin irritation is the only condition referenced in the Complaint and is the only condition that was treated when Plaintiff subsequently went to the emergency room at Adams Memorial Hospital. There were no other "critical medical conditions" to identify other than the one that Defendant Tarlton already knew about.

7

At the heart of Plaintiff's complaint is his contention that Defendant Tarlton improperly characterized his skin irritation as a non-emergency condition and that Defendant Tarlton did not provide him prednisone. Whether or not either of those allegations have merit is irrelevant. "[T]he EMTALA is not a malpractice statute . . . . EMTALA cannot be used to challenge the quality of medical care." *Nartey v. Franciscan Health Hosp.*, 2 F.4th 1020 (7th Cir. 2021). Plaintiff's claim is only focused on Defendant Tarlton's diagnosis of his condition, and, possibly, the quality and scope of the care provided. Plaintiff's claim is not aimed at disparate or de minimis screening, as is required for an EMTALA claim. Therefore, this claim should be dismissed for failure meet the Rule 12(b)(6) requirements for pleading a claim.

    ii.   Other Motions

Plaintiff filed a Motion for Sanctions [DE 46] against Defendant Tarlton and his attorney, C. Christopher Dubes. The motion alleges that Defendant and his attorney made material representations of fact in Defendant's Motion to Dismiss [DE 41]. Construing the *pro se* party's motion liberally, the Court infers that Plaintiff is seeking Rule 11 sanctions. Under Rule 11, a court may impose sanctions for misrepresentations made by a party or its attorney. Fed. R. Civ. P. 11(c)(1). The award of sanctions is discretionary by the trial court and the movant must satisfy the "high burden of showing that Rule 11 sanctions are warranted." *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 860 (N.D. Ill. 2015) (citing *Fed. Deposit Ins. Corp. v. Tekfen Const. & Installation Co., Inc.*, 847 F.2d 440, 444 (7th Cir.1988)). The test for a Rule 11 violation is whether "competent attorneys performing a reasonable investigation could not have believed in the merit of the position taken in the [motion]." *Id.* (citing *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs., Inc.*, 9 F.3d 1263, 1269 (7th Cir.1993)). Here, the Court does not find that such a violation has occurred. Plaintiff alleges that Defendant's Motion to Dismiss

falsely claims that "Plaintiff concedes Dr. Tarlton completed a 'medical screening.'" [DE 46-1, page 2]. Whether or not this is true, Defendant's allegation that Plaintiff made this concession is a minor, insignificant part of Defendant's Motion to Dismiss. Out of the three arguments for dismissal in Defendant's motion, only one mentions this allegation of Plaintiff's concession and it is only done in passing. The Court denies sanctions because "the effect of the information in the record" is minimal and "the inferences to be drawn . . . [fail] to support a violation of Rule 11." *Harlyn Sales Corp. Profit Sharing Plan,* 9 F.3d at 1270.

Plaintiff also filed a Motion for Partial Summary Judgment [DE 56] and a related Motion to Strike [DE 63]. In light of this Court granting Defendant's Motion to Dismiss [DE 41], these other two motions by Plaintiff are moot and, therefore, dismissed.

## **CONCLUSION**

For these reasons, Defendant Tarlton's Motion to Dismiss [DE 41] is GRANTED and Plaintiff's Motion for Sanctions [DE 46] is DENIED. Plaintiff's other motions [DE 56; DE 62] are DISMISSED. Consequently, all claims against Defendant BRMC and Defendant Thompson [DE 36-1] are DISMISSED. The Court DIRECTS the Clerk of Court to DISMISS this case and enter judgment accordingly.

SO ORDERED.

ENTERED: July 18, 2024

/s/ GRETCHEN S. LUND
Judge
United States District Court